**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BENJAMIN J. RUSNAK and | : | |
| ASHLEY N. RUSNAK, *in their own right*, | : | |
| C.R., *a Minor, by and through his parents*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No.  5:25-cv-6354 |
| | : | |
| WILSON SCHOOL DISTRICT, | : | |
| Defendant. | : | |

**O P I N I O N**
**Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 10 – Granted**

**Joseph F. Leeson, Jr.**                                      **June 8, 2026**
**United States District Judge**

## I.    INTRODUCTION

Plaintiffs Benjamin and Ashley Rusnak bring the present action against the Wilson

School District on behalf of themselves and their son, C.R. Plaintiffs allege that the District

permitted its teachers to harass C.R. because his grandmother was running for school board as a

conservative candidate. Plaintiffs also allege that C.R. was subject to unnecessary discipline.

Plaintiffs, pursuant to Title 42 U.S.C. § 1983, allege violations of the First Amendment, the

Fourth Amendment, the Fifth Amendment, and the Fourteenth Amendment of the United States

Constitution. The District brings the present Motion to Dismiss Plaintiffs' Amended Complaint.

For the following reasons, the Court grants the Motion to Dismiss Plaintiffs' Amended

Complaint.

060526

## II.    BACKGROUND

### A.  Factual Background

This case arises out of a series of incidents occurring at Wilson West Middle School ("West"). *See* Am. Compl. ¶ 12, ECF No. 9. The now-17-year-old plaintiff, C.R., was a student at West at the time. *See id.* In Fall 2022, C.R.'s grandmother, who is now deceased, "declared her intent" to run for a seat on the Wilson School District School Board. *Id.* ¶ 8. C.R.'s grandmother filed papers to begin her candidacy in early 2023. *See id.* ¶ 9. She espoused "conservative-leaning" political views. *Id.* ¶ 11.

Also in Fall 2022, C.R.'s father, Benjamin Rusnak, received a telephone call from West's School Resource Officer ("the SRO"). *See id.* ¶ 13.[1] The SRO told Mr. Rusnak that there had been vandalism with "some racist connotations" at the school, and C.R. was the alleged perpetrator. *Id.* ("the vandalism incident"). After speaking with C.R., Mr. Rusnak contacted the SRO, who told Mr. Rusnak that there were cameras which captured C.R. in the "area" of the vandalism, "but there was no definitive nexus between C.R. and the alleged vandalism." *Id.* ¶¶ 14–15. Nothing happened further. *See id.* ¶ 16.

In January 2023, Mr. Rusnak received a phone call from West's Vice Principal, Steve Rhoads, regarding allegedly sexual photographs of a female student on C.R.'s cell phone. *See id.* ¶ 17 ("the phone incident"). Vice Principal Rhoads told Mr. Rusnak that C.R.'s phone "had been confiscated." *Id.* ¶ 18. Mr. Rusnak picked up C.R., who said that he was involved in a group chat where the female student sent the photograph, and a photograph of C.R. "was distributed" to the chat.[2] *Id.* ¶¶ 20–21. C.R. told Mr. Rusnak that he asked the SRO, who was also present for the

---

[1]    The SRO was a police officer with the Sinking Spring Police Department. *See id.*
[2]    It is unclear who sent the photograph of C.R. to the group chat.

questioning, to let him speak to his father (Mr. Rusnak), but the SRO refused. *See id.* ¶ 22. C.R. told Mr. Rusnak that "he was forced to surrender his cell phone along with all passwords to the cell phone." *Id.* ¶ 23. The next day, Mr. Rusnak confronted Vice Principal Rhoads about the seizure of the phone and password sheet and why the SRO denied C.R.'s request to call Mr. Rusnak. *See id.* ¶ 24. The SRO told Mr. Rusnak "that the cell phone was being sent for evaluation" and that he could not return either the cell phone or the password sheet. *Id.* ¶¶ 27–29. The SRO told Mr. Rusnak that West "operated under different rules that allowed school officials to question C.R. without parental consent or attendance." *Id.* ¶ 32. Later that day, "[Mr. Rusnak] received a phone call from the SRO informing him that no one involved wanted to press charges and telling Mr. Rusnak that he could stop by the school and pick up the cell phone." *Id.* ¶ 33. Mr. Rusnak picked up the cell phone and password sheet the next day. *See id.* ¶ 34. "Following these incidents and during this time, C.R. began to exhibit a noticeable change in behavior and struggling with his mental health." *Id.* ¶ 36.

C.R. attended alternative school at KidsPeace for two weeks in February 2023 and returned to West in March 2023. *See id.* ¶¶ 37–40. Upon his return to West, C.R. alleged that two teachers—Michelle Simotas and Paula Wenger—made "harassing" comments to him in the hallways during breaks between classes. *Id.* ¶ 41 (collectively, "the teasing incidents"). These comments referenced C.R.'s grandmother, Mr. Rusnak, and Mrs. Rusnak, and included comments that the teachers would contact them regarding C.R.'s behavior. *See id.* ¶ 42. Additionally, Mr. Rusnak found that the teachers were members of an online group that made negative comments about C.R.'s grandmother and other school board candidates. *See id.* ¶¶ 44–45. Mr. Rusnak emailed the District superintendent on March 4, 2023, West's principal, and West's guidance counselor about the comments. *See id.* ¶ 47. "The email mentioned that [Mr.

Rusnak] was aware of certain teachers making disclosures and comments on social media sites, and that multiple teachers had made [negative] comments regarding the candidacy of [C.R.'s grandmother] and that he felt it inappropriate for any school staff to discuss political matters with students." *Id.* ¶ 48. Mr. Rusnak never received a response from any of the District personnel. *See id.* ¶ 49.

On April 18, 2023, Ms. Simotas emailed Mr. Rusnak and told him that C.R. exhibited behavioral issues in class. *See id.* ¶ 50. C.R. told his grandmother that Ms. Simotas "harassed and heckled" him at the local Wawa store after school. *See id.* ¶ 52. Mr. Rusnak sent another email to the same District officials as before, addressing the "comments and the direct [emotionally distressing] effect that the comments were having on C.R." *See id.* ¶ 55. Although Mr. Rusnak requested that the District remove C.R. from Ms. Simotas' Spanish class, and West initially complied, two weeks later, Mr. Rusnak learned "that C.R. was back in Ms. Simotas' Spanish class." *Id.* ¶¶ 56–59. Mrs. Rusnak also "attempted to call West to get answers to the concerns raised in Mr. Rusnak's email but likewise received no response." *See id.* ¶ 58. Mr. and Mrs. Rusnak transferred C.R. to Berks Catholic High School for the 2023-24 school year. *See id.* ¶ 60. C.R.'s school records for the 2022-23 school year did not mention "the problems or allegations experienced throughout the year." *Id.* ¶ 62.

### 1. Plaintiffs' Allegations

In Plaintiffs' First Amendment retaliation and viewpoint discrimination claim, they allege that "District personnel repeatedly referenced, reacted to, and harbored hostility toward political viewpoints expressed by C.R.'s grandmother," and "attributed these viewpoints to [C.R.], despite his status as a minor whose views were neither expressed nor demonstrated to be at issue." *Id.* ¶ 67. Plaintiffs contend that the District's employees singled out C.R. because of his grandmother's

campaign, including "heightened scrutiny, accusatory interactions, public confrontations, verbal admonitions, disproportionate disciplinary interest, insinuations of wrongdoing, and ongoing monitoring not imposed upon similarly situated students" as a result of his grandmother's conduct. *Id.* ¶¶ 68–73. "District employees subjectively disapproved of, disagreed with, or took offense to political positions publicly associated with C.R.'s grandmother and imputed such positions to C.R." *Id.* ¶ 69. Plaintiffs allege that "District personnel deliberately linked their negative treatment of C.R. to political viewpoints, thereby engaging in unconstitutional viewpoint-based discrimination;,]" which "is presumptively invalid and violates clearly established constitutional protections." *Id.* ¶ 71.

In Plaintiffs' claim for unreasonable search and seizure under the Fourth Amendment, they allege that "District personnel seized C.R.'s personal cell phone, compelled him to unlock it, demanded access to private content, reviewed unrelated digital material, and denied his repeated requests to contact a parent during the process." *Id.* ¶ 79. Plaintiffs allege that District staff "lacked individualized, articulable facts establishing reasonable suspicion that C.R.'s phone contained evidence of wrongdoing," and the search "was far broader in scope than constitutionally permissible." *Id.* ¶¶ 80–81. Plaintiffs assert that "District personnel reviewed digital content not tied to any allegation, opened private files, and accessed personal information without limitations." *Id.* ¶ 82.

Regarding Plaintiffs' Fifth Amendment coercive interrogation claim, Plaintiffs contend that C.R. "was summoned to an administrative office, isolated from peers, confronted by multiple adults, and questioned without parental presence," which "was inherently coercive." *Id.* ¶ 91. Plaintiffs allege that District officials, including Vice Principal Rhoads and the SRO, questioned C.R. about the phone incident until C.R. "was forced to surrender his cell phone

along with all passwords to his cell phone." *Id.* ¶¶ 17–23. Plaintiffs maintain that the SRO's "involvement amplified the custodial nature of the interrogation" and "signaled that the interrogation had law-enforcement implications, causing C.R. to feel he had no choice but to comply." *Id.* ¶ 92. Plaintiffs also allege that "District personnel denied C.R.'s request to contact a parent, which is a pivotal factor in assessing the coerciveness of a minor interrogation," and "engaged in accusatory, leading, and pressure-laden questioning." *See id.* ¶¶ 93–94.

Also, Plaintiffs bring a Fourteenth Amendment equal protection claim under both the "class of one" theory. Under the "class of one" theory, Plaintiffs allege that "C.R. was intentionally singled out for harsher treatment than other students who engaged in comparable or lesser conduct." *Id.* ¶ 100. Furthermore, Plaintiffs contend that the "District imposed scrutiny, discipline threats, interrogation, and searches uniquely upon C.R." and "District personnel did not subject any similarly situated students to comparable treatment. Other students engaged in similar or substantially greater conduct were not searched, interrogated, or monitored with the same intensity." *Id.* ¶¶ 100–01. Plaintiffs argue that the alleged disparate treatment "stemmed from hostility toward political views attributed to C.R.'s grandmother." *Id.* ¶ 102. Allegedly, "District personnel treated C.R. as a stand-in for viewpoints they disfavored, creating an illegitimate basis for punitive treatment." *Id.* ¶ 103.

With regard to the Fourteenth Amendment substantive due process claim based upon the state-created danger exception, Plaintiffs allege that "District personnel affirmatively created and increased the risk of emotional and psychological harm to C.R. by repeatedly isolating him, interrogating him, searching his devices, and publicly identifying him as a disciplinary concern without cause." *Id.* ¶ 108. Plaintiffs allege that "[t]he District knew or reasonably should have known that repeated targeting, coercive questioning, and aggressive treatment of a minor would

cause foreseeable harm[,]" yet the "District personnel continued the conduct,"[3] and "shock[ed]the conscience." *Id.* ¶ 109–11. C.R. "suffered damages including anxiety, humiliation, fear of returning to school, and measurable emotional harm." *Id.* ¶ 112.

In support of a *Monell* claim, Plaintiffs allege that the District had a custom of targeting students based on political viewpoints, *see id.* ¶ 115 and likewise failed to train its employees or adopt a policy to prevent such targeting. *See id.* ¶¶ 116–17.

Finally, Plaintiffs seek declaratory and injunctive relief "to ensure that the District adopts policies prohibiting viewpoint-based retaliation, ensures constitutionally compliant interrogation practices, implements proper digital search protocols, and trains staff consistent with the requirements of the United States Constitution." *Id.* ¶¶ 123–25.

### B. Procedural History

Plaintiffs filed the Amended Complaint on November 17, 2025. *See* Am. Compl., ECF No. 9. All counts relate to Mr. and Mrs. Rusnak individually and on behalf of C.R. *See id.* Count I is a First Amendment retaliation and viewpoint discrimination claim. Count II is a Fourth Amendment claim based upon an unreasonable search and seizure. Count III is a Fifth Amendment claim based upon coercive interrogation. Count IV is a Fourteenth Amendment claim based upon equal protection claim. Count V is a Fourteenth Amendment substantive due process claim based upon the state-created danger exception. Count VI is a *Monell* claim for policy, custom, and failure to train and supervise. Count VII seeks declaratory and injunctive relief.

---

[3]     It is unclear what exact conduct is at issue. Ostensibly, it appears to be the phone incident and the teasing incidents. The Court considers both incidents in the substantive due process claim based upon the state-created danger exception.

The District filed the present Motion to Dismiss the Amended Complaint on December 1, 2025. *See* Mot., ECF No. 10. The District raised the following concerns: (1) Plaintiffs fail to state a First Amendment retaliation claim for failure to plead any action that would deter C.R.'s grandmother from running for office, as well as for lack of adverse action or causation; (2) the school's search and seizure of C.R.'s phone was justified and reasonable; (3) "there is no clearly established federal constitutional right for a parent to be present during school or even police questioning of a minor on school grounds"; (4) Plaintiffs failed to allege incidents involving similarly situated students, nor any other equal protection allegations; (5) Plaintiffs fail to state a state-created danger claim by failing to allege an affirmative act. *Id.*

Plaintiffs filed their Response in Opposition on December 15, 2025. *See* Resp., ECF No. 11. The District filed its Reply on December 22, 2025. *See* Reply, ECF No. 12.

## III.   LEGAL STANDARDS

### A.  Motion to Dismiss – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations ... raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

(explaining that determining "whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.  Section 1983 – Review of Applicable Law

Title 42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### C. *Monell* – Review of Applicable Law

"Local governing bodies ... may be sued where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Lebie v. Borough*, No. 13-6819, 2014 WL 2085518, at \*2 (E.D. Pa. May 16, 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "Liability is imposed when the policy or custom itself violates the Constitution, or where the policy or custom is the 'moving force' behind a constitutional violation by an employee of the local body." *Id.* (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

"A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A custom may exist when, 'though not authorized by law, such practices of state officials are so permanent and well settled that they operate as law.'" *Id.* (quoting *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 923 (3d Cir. 2010)). "Custom requires proof of knowledge and acquiescence by the decisionmaker." *Robinson v. City of Phila.*, No. 15-1574, 2015 WL 5965003, at \*7 (E.D. Pa. Oct. 13, 2015) (quoting *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009)).

"It is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Id.* (quoting *Andrews*, 895 F.2d at 1481); *see also id.* (concluding Third Circuit case law "unequivocally imposes on [p]laintiff an 'obligation to plead in some fashion that [a natural person] had final policy making authority, as that is a key element of a *Monell* claim'" (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010))).

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (recognizing that a pattern of violations is generally necessary to demonstrate deliberate indifference in failure to train claims); *see also Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). Failing to train municipal employees can also be a source of liability, but only where "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). The plaintiff must show that "the deficiency in training actually caused the [injury]." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). To prove that a municipality's failure to train or supervise amounts to deliberate indifference, Plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999).

### D.  First Amendment Retaliation – Review of Applicable Law

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990).

060526

> In order to set forth a cognizable claim for First Amendment retaliation, a plaintiff must allege that '(1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.'

*Washington v. Barnhart*, No. 17-00070, 2020 WL 2425797, at *6 (W.D. Pa. April 20, 2020) (quoting *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015)). "Further, to establish the critical element of causation, a plaintiff usually must allege 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Barnhart*, 2020 2020 WL 2425797, at *6 (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

In *Heffernan v. City of Paterson*, the Supreme Court held that a defendant may be liable for retaliation under the First Amendment when the defendant takes a retaliatory action against a plaintiff based on the defendant's mistaken belief that the plaintiff has engaged in protected activity. *See* 578 U.S. 266, 268 (2016).

### E.  Viewpoint Discrimination – Review of Applicable Law

Viewpoint discrimination is an "egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Rather than focusing on a subject, it "targets not subject matter, but particular views taken by speakers[.]" *Id.* "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* (citation omitted); *see also Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 111–12 (2001). "[T]he test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582

U.S. 218, 248 (2017) (Kennedy, J., concurring) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 806 (1985) ("[T]he government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject")). Discrimination against speech because of its message is presumed unconstitutional. *See Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 641–643 (1994).

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). "[T]hat is viewpoint discrimination: Giving offense is a viewpoint." *Matal*, 582 U.S. at 243. The Supreme Court has "said time and again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'" *Id.* (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)) (additional citations omitted).

### F. Fourth Amendment – Review of Applicable Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989); *Ashton v. City of Uniontown*, 459 F. App'x 185, 189 (3d Cir. 2012) (stating that a "seizure occurs whenever a government actor terminates an individual's ability to move freely").

In *New Jersey v. T.L.O.*, the United States Supreme Court recognized that "special needs" exist in the public-school context and that "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject ... [and] some modification of the level of suspicion of illicit activity needed to justify a search." 469 U.S. 325,

334 n.2, 340 (1985). The Court reasoned that requiring school officials to obtain a warrant before searching a student "would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *Id.* The Court noted that courts must balance "privacy interests of schoolchildren" against the "substantial need of teachers and administrators for freedom to maintain order in the schools." *Id.* at 341. The Court articulated a two-part test to determine whether a search of a student by a public-school official is reasonable: the search (1) must be "'justified at its inception'" and (2) must be "'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 341–42 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1986)). With respect to the first element, a search is "'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.*; *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009) ("The lesser standard for school searches could as readily be described as a moderate chance of finding evidence of wrongdoing."). Regarding the second element, "a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342.

### G.  Fifth Amendment – Review of Applicable Law

Pursuant to the Fifth Amendment, the Supreme Court in *Miranda v. Arizona* adopted a set of prophylactic measures to safeguard the constitutional guarantee against self-incrimination. *See* 384 U.S. 436 (1966). *Miranda* warnings are not required when school officials question students for disciplinary purposes. *See K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356, 366 (M.D. Pa. 2014); *Jarmon v. Batory,* No. 94-284, 1994 WL 313063, at *11 (E.D. Pa. 1994)

("Under the federal constitution, students facing disciplinary action in public schools are not entitled to *Miranda* warnings.") (citation omitted). Moreover, "a *Miranda* violation is remedied by the suppression of evidence of any self-compelled incrimination, not a civil action[.]" *K.A.*, 28 F. Supp. 3d at 366–67. There is also no constitutional right to receive a *Miranda* warning. *See Vega v. Tekoh*, 597 U.S. 134, 150 & n.6 (2022) (holding that *Miranda* warnings are prophylactic rules and do not confer substantive constitutional rights, so failure to provide them does not violate the Fifth Amendment); *see also Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) ("[V]iolations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself. The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation recognized in *Miranda v. Arizona* . . ., is merely a procedural safeguard, and not a substantive right.") (citations omitted).

### H. State-Created Danger – Review of Applicable Law

The Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect its citizens from harms caused by private actors. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). An exception to this rule is known as the state-created danger doctrine. *See Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). To assert a state-created danger claim under the Fourteenth Amendment Due Process Clause, a plaintiff must plead:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281–82 (3d Cir. 2006) (internal quotations omitted). The more-specific-provision rule mentioned in relation to substantive due process claims also applies to claims brought under the state-created-danger doctrine. *See Wheeler v. City of Phila.*, 367 F. Supp. 2d 737, 747 (E.D. Pa. 2005) (explaining why *Graham* applies to claims under the state-created-danger theory). The Third Circuit recognizes three possible standards can be used to determine whether state action shocked the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm. *See Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006).

## I.   Equal Protection Clause – Review of Applicable Law

"If the action does not involve a suspect classification, the plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose." *Henry v. Buskirk*, No. 08-1348, 2011 U.S. Dist. LEXIS 109567, at *22–23 (E.D. Pa. Sep. 26, 2011); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Under the "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

## IV.   ANALYSIS

Section 1983 does not create substantive rights or impose obligations on government officials but provides a cause of action by which persons may seek relief for governmental violations of rights protected by the United States Constitution or federal law. *See Albright v.*

*Oliver*, 510 U.S. 266, 271 (1994). Therefore, the Court must consider whether Plaintiffs suffered any constitutional violations.

The Court finds that they did not. Plaintiffs Mr. and Mrs. Rusnak cannot state claims for constitutional violations under Section 1983 in their individual capacities. Plaintiffs also fail to allege any constitutional violations under the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment. Thus, the Court dismisses the entire Amended Complaint for failure to state a claim.

### A. Mr. and Mrs. Rusnak's Claims in their Individual Capacities

Plaintiffs Mr. and Mrs. Rusnak fail to state claims for constitutional violations in their individual capacities. Generally, "[i]njuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing." *Howard v. Chester Cnty. Off. of Juv. Prob. & Parole*, 365 F. Supp. 3d 562, 571 (E.D. Pa. 2019) *aff'd*, No. 19-1697, 2019 WL 13131142 (3d Cir. Nov. 27, 2019) (citation omitted). In the Amended Complaint, Mr. and Mrs. Rusnak do not plead facts relating to their own injuries, only C.R.'s injuries. Therefore, Mr. and Mrs. Rusnak fail to state individual-capacity claims for constitutional violations. *See George v. Bd. of Educ. of the Twp. of Millburn*, 34 F. Supp. 3d 442, 464 (D.N.J. 2014) (finding that parents could not recover in their individual capacities for alleged violations of their child's equal protection rights). They are dismissed from the case in their individual capacities.

### B. First Amendment Retaliation

Plaintiffs fail to state a First Amendment retaliation claim. Initially, Plaintiffs fail to plead the first element of a First Amendment retaliation claim: constitutionally protected activity. Plaintiffs allege that the District retaliated against C.R. for his grandmother's political campaign,

which the First Amendment protects. *See* Am. Compl. ¶ 69; *see also Elliott v. Pa. Interschol. Ath. Ass'n*, 486 F. Supp. 3d 838, 851 (M.D. Pa. 2020) (citing *Brown v. Hartlage*, 456 U.S. 45, 53 (1982)) ("[A] candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates."). Yet, Plaintiffs fail to identify the constitutionally protected activity that C.R. *himself* engaged in. The Court is unaware of any case permitting a plaintiff to sue for First Amendment retaliation based on the constitutionally protected activity of another. Plaintiffs cannot state a First Amendment retaliation claim because of *C.R.'s grandmother's* protected activity.

Plaintiffs contend that imputed political discrimination can be the basis of Section 1983 liability in a First Amendment retaliation claim. Yet, *Heffernan* is inapposite. *See Heffernan*, 578 U.S. at 268, 273. There, the Supreme Court held that a government official demoting an employee because the official believed, *incorrectly*, that the employee had supported a particular candidate for mayor, deprived the employee of his First Amendment rights. *See id.* at 268. Here, however, there are no factual allegations showing that the District's employees believed C.R. held his grandmother's beliefs. Rather, the Amended Complaint includes only conclusory allegations that the employees "imputed such positions to C.R." and targeted C.R. based on "perceived political viewpoints," *see* Am. Compl. ¶¶ 69, 72, 115, but conclusory allegations are insufficient, *see Iqbal*, 556 U.S. at 686 (holding that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context").

Regardless, even if there were sufficient allegations that District's employees imputed C.R.'s grandmother's political beliefs to C.R., Plaintiffs nevertheless fail to plausibly plead the other two elements of a First Amendment retaliation claim. Plaintiffs fail to plead the second

element of a First Amendment retaliation claim: adverse action. First, the teachers' comments alone do not present an adverse action because verbal threats generally do not constitute adverse actions. *See Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013) ("[V]erbal threats alone do not constitute adverse action for the purposes of establishing a *prima facie* retaliation claim."). Second, the investigations into both the phone incident and the vandalism incident are not adverse actions because the District's employees did not discipline C.R.[4] Rather, C.R.'s school record did not even mention any of the alleged incidents. *See* Am. Compl. ¶ 62. Thus, he suffered from no adverse actions as a result of the investigations.

Ultimately, Plaintiffs fail to plead the third element of a First Amendment retaliation claim: causation. Plaintiffs fail to allege causation between any of the alleged incidents and C.R.'s grandmother's campaign.

First, Plaintiffs fail to plausibly plead causation regarding the vandalism incident. Plaintiffs appear to allege that the District's employees investigated C.R. for the vandalism incident because C.R.'s grandmother was running for office. Yet, Plaintiffs do not allege any facts that District employees investigated C.R. for the vandalism incident because of his grandmother's campaign or her political views. Rather, the Amended Complaint only alleges that

---

[4]       The parties do not present, and the Court is unaware of, any case involving an adverse action based upon a school investigating a student for violating school rules that does not result in discipline of the student. *But see D.C., by and through A.T. v. Pittsburgh Pub. Schs.*, No. 19-12, 2022 WL 267359, at *13 (W.D. Pa. Jan. 28, 2022) (noting that school discipline, including suspensions and detentions, was sufficient to plead adverse action in a discrimination claim). However, in employment cases, courts have held that an investigation without discipline is not an adverse action. *See Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 600 (E.D. Pa. 2020) ("[R]eporting an employee for internal investigation is not alone an adverse employment action."); *see also Burton v. Pa. State Police*, 990 F. Supp. 2d 478, 505 (M.D. Pa. 2014), *aff'd*, 612 F. App'x 124 (3d Cir. 2015) ("[A] mere investigation is not an adverse employment [action].").

the school investigated C.R. because he was seen in the area of the vandalism. *See* Am. Compl. ¶¶ 13–15. Plaintiffs thus fail to plead causation with regard to the vandalism incident.

Second, Plaintiffs fail to plausibly plead causation with regard to the phone incident. Plaintiffs ostensibly allege that the District investigated C.R. for the phone incident based upon disagreement with his grandmother's campaign (and the alleged belief that C.R. shared her views). Plaintiffs fail to allege any facts that the District personnel investigated him because of his grandmother's campaign. Rather, Plaintiffs themselves concede that District employees investigated C.R. because C.R. was allegedly part of a group chat where a minor female student allegedly sent a sexual photograph. *See* Am. Compl. ¶¶ 17–21. Plaintiffs therefore fail to plead facts tying the investigation into the phone incident to C.R.'s grandmother's campaign or her political views.

Third, Plaintiffs fail to plausibly plead causation with regard to the teasing incidents. Plaintiffs allege that the teachers only made the comments about telling C.R.'s grandmother about his behavior because the teachers disagreed with his grandmother's political positions and believed that C.R. espoused the same views. Although C.R.'s teachers did mention his grandmother when saying that they would tell his grandmother and parents about his bad behavior, *see* Am. Compl. ¶¶ 41–42, 52, such comments alone do not directly relate to the grandmother's campaign. Instead, the comments relate to C.R.'s own behavior. That the teachers were allegedly members of an online forum that criticized conservative candidates, including C.R.'s grandmother, *see* Am. Compl. ¶¶ 44–45, does not distract from the fact that the Amended Complaint only alleges that the teachers' comments discussed C.R.'s behavior and only C.R.'s behavior. Therefore, Plaintiffs do not plausibly plead facts tying any of the three incidents to C.R.'s grandmother's campaign or her political views.

060526

Furthermore, Plaintiffs' allegation that all three incidents in the same school year, considered together, present a "pattern of antagonism," still fails to plausibly plead causation. *DeFlaminis*, 480 F.3d at 267. Although the Amended Complaint alleges three incidents occurring in a school year, the Amended Complaint fails to tie any of the incidents to C.R.'s grandmother's campaign or her political views. Thus, Plaintiffs present no pattern of antagonism sufficient to plead First Amendment retaliation.

Therefore, the Court dismisses the First Amendment retaliation claim.

### C.  Viewpoint Discrimination

Plaintiffs fail to state a claim for implied viewpoint discrimination. Plaintiffs contend that District personnel attributed C.R.'s grandmother's views to him and discriminated against him on the basis of political viewpoint. *See* Am. Compl. ¶¶ 71–72.

Plaintiffs provide no case law, nor does the Court find case law, supporting a viewpoint discrimination claim based upon imputing another's views. Plaintiffs likewise provide no factual support for their contention that the District discriminated against C.R. on the belief that he shared her conservative views. Plaintiffs do not "single out a subset of messages for disfavor based on the views expressed." *Matal*, U.S. at 248 (Kennedy, J., concurring) (citation omitted). Instead, Plaintiffs refer to numerous incidents (including the vandalism incident, the phone incident, and the teasing incidents) allegedly involving C.R. and allege that those incidents occurred because District personnel believed that C.R. was conservative, like his grandmother. Such conclusory allegations fail to state a claim. *See Iqbal,* 556 U.S. at 678. Plaintiffs fail to allege any facts sufficient to support a viewpoint discrimination claim.

The Court dismisses Count I.

060526

### D.  Unreasonable Search and Seizure

Plaintiffs fail to state a claim for an unreasonable search and seizure under the Fourth Amendment. Plaintiffs allege that the District did not have reasonable suspicion that C.R.'s cell phone contained evidence of wrongdoing to seize the phone and search it. However, Plaintiffs concede that the District was investigating "allegedly sexual photographs of a [minor] female student on C.R.'s cellular phone," Am. Compl. ¶ 17, the seriousness of which is balanced against C.R.'s expectation of privacy. *See TLO*, 469 U.S. at 341. Here, the seizure of the cell phone and subsequent search of the cell phone, based upon the allegedly explicit photographs of a minor student, was reasonable. *See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 148–49 (3d Cir. 2005) (concluding that it was reasonable for the school to detain the student "to investigate the incident of sexual misconduct" given the "purpose of [the] detainment" and the "serious nature of [the victim's] allegations" and "determine an appropriate punishment"); *see also Piechowicz v. Lancaster Cent. Sch. Dist.*, No. 17-845, 2022 WL 22782841, at *15 (W.D.N.Y. Jan. 18, 2022), *report and recommendation adopted*, No. 17-845, 2022 WL 17540648 (W.D.N.Y. Dec. 8, 2022) (dismissing a Fourth Amendment claim because the seizure of the student plaintiff and search of his cell phone, which was limited with regard to the picture, were reasonable based upon another student's complaint that the plaintiff had an illicit picture on his cell phone).

To the extent that Plaintiffs allege District personnel reviewed unrelated material on C.R.'s phone and the search was excessive in scope, Plaintiffs provide no factual allegations about what District staff reviewed on C.R.'s phone. With regard to Plaintiffs' allegation that District staff reviewed "private files" on the phone, *see* Am. Compl. ¶ 82, Plaintiffs do not allege what the files contained. Without additional facts alleging how the District staff exceeded the

search of the phone beyond the explicit photograph or discussion in the group chat, Plaintiffs fail to state a Fourth Amendment violation.

The Court dismisses Count II.

### E.  Coerced Interrogation

Plaintiffs fail to plead any facts that the District's questioning of C.R. regarding the phone incident was coercive and violated the Fifth Amendment.

Plaintiffs allege that the questioning was coercive because the SRO denied C.R.'s request to contact his parents, yet no court within the Third Circuit has found that a child has a right to have a parent present at a school's questioning of a student. Rather, a court in the Eastern District of Pennsylvania found that there is no Fifth Amendment right to "the presence of a parent or lawyer when a student is being questioned about conduct that may violate school rules." *G.C. v. Bristol Twp. Sch. Dist.*, No. 05-4800, 2006 WL 2345939, at *2 (E.D. Pa. Aug. 11, 2006) (noting that there was no right under the Fifth Amendment to have a parent present at questioning); *see also K.A.*, 28 F. Supp. 3d at 364–67 (dismissing a Fifth Amendment claim where the school never told the student that he could contact his parents); *Brian A. ex rel. Arthur A. v. Stroudsburg Area Sch. Dist.*, 141 F. Supp. 2d 502, 511 (M.D. Pa. 2001) (dismissing a Fifth Amendment claim and finding that students have no right to receive a *Miranda* warning when being questioned by school officials for disciplinary infractions).

Plaintiffs also fail to plead how the District staff's questioning in an "inherently coercive" environment violated C.R.'s Fifth Amendment rights. Plaintiffs contend that the environment of the questioning was coercive and that District staff asked "accusatory" questions which intimidated C.R. and forced him to comply. *See* Am. Compl. ¶¶ 91–94. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against

himself[.]" U.S. Const. amend. V. Generally, Fifth Amendment claims relate to one being coerced into providing a statement, but Plaintiffs do not plead whether C.R. confessed to anything during the questioning. [5] Plaintiffs have cited no case law, nor can the Court find case law, supporting a Fifth Amendment claim for a coercive environment alone. In sum, Plaintiffs fail to plead whether an "inherently coercive" environment alone violates the Fifth Amendment, how the questioning was coercive, and whether it resulted in a confession. Plaintiffs thus fail to state a Fifth Amendment violation.

The Court dismisses Count III.

### F. Equal Protection: Class of One

Plaintiffs fail to state an equal protection claim under the "class of one" theory because Plaintiffs fail to identify any similarly situated West students who faced similar treatment as C.R. To state an equal protection class of one claim, courts have required plaintiffs to identify specific instances where similarly situated individuals were treated differently. Here, Plaintiffs do not plead whether the District's employees investigated other students for the vandalism incident, whether the District's employees questioned the other members of the group chat regarding the phone incident, or whether the teachers teased other students. In addition to failing to identify any other students, Plaintiffs do not specify *how* the District treated C.R. differently from any other students. *See Phillips*, 515 F.3d at 243 ("[T]o state a claim for class of one equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment.") (citation omitted); *Hill*, 455 F.3d at 239 (affirming dismissal of a complaint pursuing a "class of

---

[5]    Plaintiffs cannot bring a Fifth Amendment claim under Section 1983 for the District staff's failure to provide C.R. with a *Miranda* warning during his questioning because there is no constitutional right to receive a *Miranda* warning. *See Vega*, 597 U.S. at 150.

one" equal protection claim because the plaintiff failed to "allege the existence of similarly situated individuals," and the only allegedly similarly situated coworker faced the same treatment as the plaintiff). Consequently, Plaintiffs fail to state an equal protection claim under the "class of one" theory.

The Court dismisses Count IV.

### G. Substantive Due Process – State-Created Danger

Plaintiffs fail to state a state-created danger claim.

Initially, Plaintiffs fail to plead that C.R. suffered the requisite harm sufficient to state a state-created danger claim. Plaintiffs maintain that C.R. suffered emotional distress, including anxiety and humiliation, but the Amended Complaint contains no allegations that he suffered physical harm as a result of the questioning in the phone incident and the teasing incidents. "[M]ental or emotional distress alone" (without physical manifestation of symptoms) "is insufficient to constitute the requisite harm needed to state a state-created danger claim." *Carey v. City of Wilkes-Barre*, 410 F. App'x 479, 483 (3d Cir. 2011) (holding that the plaintiff's alleged anxiety did "not rise to the level of foreseeable and fairly direct harm," and "the emotional distress alleged by [the plaintiff] is not a cognizable harm"); *see also Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 667 (E.D. Pa. 2020) (dismissing a state-created danger claim for failing to plead physical harm).

The Court also notes that the District's two alleged acts do not shock the conscience. First, in alleging that the District personnel questioned C.R. about the phone incident, Plaintiffs fail to plead any facts about District staff's conduct during the questioning, much less how such conduct shocks the conscience. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *see also Sanford*, 456 F.3d at 311 (holding that a school guidance counselor's failure to contact the

25
060526

school psychologist or the student's parents after a student wrote a note implying that he may die by suicide, and then later did so, did not shock the conscience).

Second, to the extent Plaintiffs base their state-created danger claim upon the teasing incidents, they fail to plead conscience-shocking behavior. Rather, the teachers made comments about how they would tell C.R.'s grandmother about his behavior. Although potentially inappropriate, the teachers' comments do not shock the conscience. *See M.M. v. Tredyffrin/Easttown Sch. Dist.*, No. 06–1966, 2006 WL 2561242, at *13 (E.D. Pa. Sept. 1, 2006) (finding that a teacher's regular mocking of a student's handwriting did not shock the conscience); *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 66 F. Supp. 3d 570, 585 (M.D. Pa. 2014) (noting that a teacher's calling a student "stupid" and a "dummy" and throwing the student's desk on the floor did not shock the conscience); *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (holding that a teacher's yelling and screaming at students and referring to them as "bimbos," "fatso," and the "welfare bunch" did not shock the conscience); *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1255 (10th Cir. 1996) (holding that a teacher's regularly calling a student a prostitute did not shock the conscience nor constitute a substantive due process violation).

The Court dismisses Count V.

## H.  Additional Claims

Since the Court dismisses the Amended Complaint for failure to plead facts concerning constitutional violations, Plaintiffs' *Monell* claim in Count VI fails. *See Bagley v. Upper Darby Twp.*, No. 23-1747, 2024 WL 3678979, at *6 (E.D. Pa. Aug. 6, 2024) ("In the absence of a constitutional violation, [the plaintiff's] *Monell* claim necessarily fails."). Additionally, many of

26

Plaintiffs' allegations in their *Monell* claim appear deficient. The Court dismisses Count VI without prejudice.

The Court dismisses Count VII with prejudice because declaratory and injunctive relief are remedies, not independent causes of action. *See Haque v. Swarthmore Coll.*, No. 15-1355, 2016 WL 11812329, at *16 (E.D. Pa. Feb. 3, 2016) ("A claim for injunctive relief pleads for a remedy, but does not constitute an independent cause of action.") (citations omitted).

## I.   Amendment

The Court dismisses Counts I, II, III, IV, V, and VI of the Amended Complaint without prejudice. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that a court should allow amendment of a complaint unless doing so would be inequitable or futile).

However, to the extent Plaintiffs allege a constitutional violation based upon the District's failure to provide C.R. with a *Miranda* warning, such a claim is dismissed with prejudice because it fails as a matter of law. *See Vega*, 597 U.S. at 150. Additionally, the Court dismisses Mr. and Mrs. Rusnak's individual capacity claims with prejudice because they fail as a matter of law. *See Harper v. Dinella*, 589 F. App'x 67, 69 (3d Cir. 2015) (finding that allowing amendment would be futile because the claims failed as a matter of law).

## V.   CONCLUSION

For the reasons set forth above, the District's Motion to Dismiss Plaintiffs' Amended Complaint is granted, and Counts I, II, III, IV, V, and VI of the Amended Complaint are dismissed without prejudice. To the extent Count III is based upon a *Miranda* violation, it is dismissed with prejudice. Count VII of the Amended Complaint is dismissed with prejudice because it fails as a matter of law. All claims by Plaintiffs Benjamin and Ashley Rusnak in their individual capacities are dismissed with prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

060526